United States District Court
Middle District of Florida
Jacksonville Division

**Ronald Burkett,**

  *Plaintiff,*

v.                  No. 3:19-cv-563-J-34PDB

**Hickory Foods, Inc.,**

  *Defendant.*

## Report and Recommendation

 Before the Court in this case under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, is the parties' joint motion under *Lynn's Food Stores, Inc. v. U.S. by & through U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982), for approval of a settlement agreement and dismissal of the action with prejudice. Doc. 17.

## Background

 In May 2019, Ronald Burkett sued Hickory Foods, Inc., on behalf of himself and others similarly situated. Doc. 1. In the complaint, he alleges these facts.

 Hickory distributes meat wholesale to grocery retailers. Doc. 1 ¶ 14. Hickory hired Burkett in January 2010 as a machine technician. Doc. 1 ¶ 20. Burkett would weld, build, troubleshoot, and repair meat-manufacturing equipment. Doc. 1 ¶ 21. From January 2010 to July 2018, Hickory failed to pay Burkett at one and one-half times his regular rate of pay for any overtime hours worked. Doc. 1 ¶ 22. He worked more than forty hours a week most weeks. Doc. 1 ¶ 24. Hickory failed to maintain proper time records. Doc. 1 ¶ 24.

He alleges the facts are common to a class of machine technicians who worked for Hickory within the last three years and were not paid time-and-a-half for overtime hours. Doc. 1 ¶¶ 25–34.

He brings one claim: a FLSA claim for failure to pay overtime wages, Doc. 1 ¶¶ 35–43. He seeks certification of the action as a class action; overtime wages; liquidated damages; pre- and post-judgment interest; attorney's fees, costs, and expenses; and a declaration stating that Burkett violated FLSA, failed to keep accurate time records, has a legal duty to pay overtime wages, failed to prove a good-faith defense, and that Burkett is entitled to damages and attorney's fees. Doc. 1 ¶ 43. He also filed a notice of consent to join the action. Docs. 2, 2-1.

Hickory filed an answer denying liability. Doc. 7. Hickory raises 29 affirmative or other defenses, including that Hickory is not a proper party to the action, executive or administrative exemptions apply, Burkett cannot properly represent the class, and that Hickory did not act willfully. Doc. 7. Regarding the proper entity to sue, Hickory states, "Defendant admits that Hickory is a management company that provides administrative and payroll services to [nonparty] Flanders Provision Company LLC," and that Flanders "is engaged in the manufacturing and wholesale distribution of meat for retail grocery customers throughout the United States." Doc. 7 ¶¶ 14, 17.

In July 2019, Burkett answered the Court's interrogatories. Doc. 13. He states his regularly scheduled work period was Monday through Friday from 3:00 p.m. to 1:00 a.m., but because of the work he was often required to work longer or on the weekends. Doc. 13 at 1. He states that, in 2014, his title changed from "technician" to "supervisor," but his duties did not change. Doc. 13 at 1. He states his regular rate of pay was $960 a week. Doc. 13 at 1–2. He provides an accounting from May 2016 (assuming a three-year statute of limitations) to July 2018. Doc. 13 at 2. He states he worked approximately 13 hours of overtime each week. Doc. 13 at 2. He answers the interrogatories on wages owed as this:

> d. pay received versus pay claimed: **Please see response to 7(e) below.**
>
> e. total amount claimed: I am unable to accurately determine the amount that I am owed for unpaid overtime without additional documentation from Defendant. However, the following is a good faith estimate of the wages which I am owed. **$51,948.00 plus liquidated damages, and attorney's fees and costs calculated as follows:**
>
> With the FLSA's 3-year statute of limitations which looks back to May 13, 2016, I was employed a total of 111 work weeks. During this time, I worked an average of 13 hours of overtime each week.
>
> Based on my recollection of the amount that I was paid each week, my damages are:[1]
>
> $960.00/53 hours = $18.11 regular hourly rate of pay $18.11/2 = $9.06 half-time overtime rate
> $9.06/hour x 13 overtime hours per week x 111 weeks = $13,073.58, plus an equal and additional amount for liquidated damages, in addition to attorneys' fees and costs incurred on my behalf.

Doc. 13 at 2.[1]

Burkett alleges he complained orally and in writing to his supervisor beginning in 2014. Doc. 13 at 2. He alleges the supervisor responded Burkett could work overtime without an hourly fee because he was labeled as a supervisor. Doc. 13 at 3. He states he has some time stubs and pay sheets and a copy of a complaint he submitted to the vice president. Doc. 13 at 3.

Hickory provided a verified summary of the hours worked and wages paid. Docs. 14, 14-1. Hickory explains Burkett was an employee of nonparty Flanders, was paid a salary for all hours worked, was exempt from FLSA requirements, and

---

[1] It is unclear whether the $51,940 is his regular salary, because he later asks for $13,074.58 in unpaid wages, and had responded to the question asking for "pay received versus pay claimed" by answering "Please see response to 7(e) below." Doc. 13 at 2. He also adds that he does not concede that a half-time rate would be appropriate. Doc. 13 at 2 n.1.

3

received a one-hour lunch break. Doc. 14 at 1. Neither Hickory nor Flanders has records of the hours Burkett worked. Doc. 14 at 1. The verified summary shows the pay date, gross pay, no overtime hours listed, and the weekly payrate ranging from $942.30 in 2016 to $990.38 in 2018. Doc. 14-1.

No one consented to join the action. In September 2019, the parties filed a notice they had settled. Doc. 15. The Court entered an order directing them to submit settlement documents for the Court's review if they had compromised or a notice certifying they had not compromised. Doc. 16. The parties filed the current motion to approve the settlement agreement with a copy of the agreement. Docs. 17, 17-1.

**Motion**

In the motion, the parties explain that although the complaint included collective-action allegations, no one has opted in, and Burkett has not moved for conditional certification. Doc. 17 at 1. They explain the parties dispute whether Burkett was exempt from overtime requirements because of an executive, professional, or administrative exemption, and they dispute the number of hours he worked. Doc. 17 at 1. Hickory maintains it is not the proper party, is only a management company, and that Flanders was the actual employer. Doc. 17 at 1–2. The parties explain Burkett did not name Flanders but he "acknowledges his association with both companies," and Flanders is therefore included in the settlement agreement. Doc. 17 at 2 n. 1. The parties explain Hickory maintains it paid Burkett in full and did not act willfully, and the parties dispute whether defenses like laches would apply. Doc. 17 at 2. And Hickory maintains that if Burkett were entitled to overtime, a "fluctuating workweek method" should apply. Doc. 17 at 2.

The parties explain that, after exchanging payroll, time records, and other evidence, they attended an in-person settlement conference and agreed to this settlement. Doc. 17 at 2. They explain that while Hickory denies liability, the parties wish to avoid the expense and uncertainty of continued litigation, including with

4

further discovery and risk of trial. Doc. 17 at 2–3. The parties and their counsel believe the settlement is a fair and reasonable resolution of the issues. Doc. 17 at 3. The parties explain Burkett will receive wages and liquidated damages, and the attorney's fees and costs were negotiated separately. Doc. 17 at 3. Hickory will pay Burkett $5688.90 in wages and an equal amount in liquidated damages (for a total of $11,377.80), which Burkett agrees is a fair resolution of the claims based on the documented work hours. Doc. 17 at 3. Hickory will separately pay Burkett's counsel $4622.20 in attorney's fees and costs (for a total payment of $16,000). Doc. 17 at 3.

The parties assert there has been sufficient investigation to evaluate the claims and defenses, and before the in-person settlement conference, they had engaged in settlement negotiations for months. Doc. 17 at 6. The amount to Burkett accounts for his "personal interest" in ending litigation at this stage. Doc. 17 at 6. Burkett has accepted this compromise after being made aware of any potential damages. Doc. 17 at 6. Burkett is receiving a full recovery under the "fluctuating work week method," and in his responses to interrogatories, Burkett did not account for periodic pay raises. Doc. 17 at 7. Both parties are represented by competent counsel experienced in labor law. Doc. 17 at 7-8. The parties ask the Court to approve the settlement agreement and dismiss the case with prejudice. Doc. 17 at 8.

**Agreement**

In exchange for $16,000 (the total to Burkett and his counsel), Burkett agrees to release Hickory and Flanders from all actions "arising out of [Burkett's] claim for unpaid wages that arose or may have arisen prior to the execution of this Agreement," specifically agreeing to release them from claims under FLSA, common law, and any other statute that could have been asserted here regarding overtime compensation and the attorney's fees. Doc. 17-1 ¶ 1. The agreement contains a provision regarding the payment amounts and timing, ¶ 2; a provision regarding filing the settlement motion, ¶ 3; provisions that any violations of the settlement agreement entitle the non-violating party to injunctive relief, damages, and attorney's fees and costs, ¶¶ 4,

5

5; another provision regarding the release of overtime claims against Hickory and Flanders, ¶ 6; a provision regarding taxes, ¶ 7; a provision stating that the agreement is not an admission of fault by Hickory or Flanders, ¶ 8; a provision that the parties have made no other promises, ¶ 9; a provision regarding enforceability of the terms, ¶ 10; a provision that this agreement constitutes the entire agreement, ¶ 11; a provision stating that Burkett is competent, ¶ 12; a provision stating that the agreement shall be interpreted under Florida law, ¶ 13;[2] and a provision that the agreement shall survive despite any unenforceable provision, ¶ 14. Doc. 17-1.

**Authority**

Passed in 1938, FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[ ] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). If an employee proves his employer violated FLSA, the employer must pay him unpaid wages (for up to two years or three had the employer intentionally violated the law, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)), an equal amount as liquidated damages (absent the employer's proof of good faith and reasonable grounds for believing it was not violating FLSA, 29 U.S.C. § 260), and attorney's fees and costs. 29 U.S.C. § 216(b).

To foster FLSA's purpose and to prevent an employer from using its superior bargaining position to take advantage of an employee, the Eleventh Circuit, in *Lynn's Food Stores, Inc. v. U.S. by & through U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982), placed limits on the ability of private parties to settle a FLSA case. *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013). To do so, they must present their agreement to the court, and the court must scrutinize it for fairness. *Id.* at 1306–

---

[2]This report and recommendation does not address whether federal or Florida law would govern in an action seeking enforcement of the agreement.

07. If the agreement reflects a fair and reasonable compromise over a disputed issue, the court may approve it to promote the policy of encouraging settlement. *Lynn's*, 679 F.2d at 1354.

A court should presume a settlement is fair and reasonable. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Factors pertinent to fairness and reasonableness may include (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994).

"FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). Besides reviewing a compromise of a FLSA claim, a court must "award a reasonable attorney's fee to [the plaintiff's] counsel," *id.* at 352, and must "insure that no conflict has tainted the settlement," *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). If the parties negotiated attorney's fees separately from the amount to the plaintiff, the court need not undertake a lodestar review of the attorney's fees for reasonableness. *Bonetti*, 715 F. Supp. 2d at 1228.

## Analysis

Based on the parties' representations and a review of the complaint, the answer and affirmative defenses, Burkett's answers to the Court's interrogatories, Hickory's verified summary, the motion to approve the settlement, and the settlement agreement, the undersigned finds the agreement is a fair and reasonable compromises of disputed issues.[3]

---

[3] If a case filed as a FLSA collective action is settled *after* conditional certification of a collective action, the court may consider whether final certification is appropriate before approving a settlement. *Compare, e.g., Ruddell v. Manfre*, No.

The parties had an opportunity to consult with experienced counsel and entered into the agreement knowingly and voluntarily. Doc. 17 at 6–8. Burkett claims unpaid overtime and liquidated damages, but Hickory contends he would be entitled to no overtime or overtime calculated under a "fluctuating workweek method," for which he is being paid in full here. Doc. 17 at 2, 7. While denying liability, Hickory and Flanders have agreed to pay $5688.90 for wages and an equal amount in liquidated damages, plus a separately negotiated amount for attorney's fees. There is no stated or apparent collusion. Without a settlement, the parties would have to continue discovery, possibly engage in motion practice, and possibly proceed to trial, and Burkett would risk receiving nothing. The parties and their counsel believe this is a reasonable settlement. Doc. 17 at 3.

The agreement contains no provisions commonly found objectionable, such as a general-release provision, a confidentiality provision, or a non-disparagement provision, and the motion does not ask the Court to retain jurisdiction to enforce the agreement.[4]

---

3:14-cv-873-J-34MCR, 2015 WL 7252947, at *1–3 (M.D. Fla. Nov. 17, 2015) (unpublished) (deeming consideration of final certification necessary), *with Campbell v. Pincher's Beach Bar Grill Inc.*, No. 2:15-cv-695-FtM-99MRM, 2017 WL 3700629, at *1–2 (M.D. Fla. Aug. 24, 2017) (unpublished), *report and recommendation adopted*, 2017 WL 3668889 (deeming consideration of final certification unnecessary).

Because Burkett has not moved for conditional certification of a collective action, no special consideration is required for a fairness review under *Lynn's Food*. This Court has approved individual FLSA settlements without special analysis where the Court had not yet granted conditional certification. *See, e.g., Serino v. Enhanced Recovery Co., LLC,* No. 3:15-cv-1418-J-25PDB, 2017 WL 11048878, at *3 (M.D. Fla. Feb. 9, 2017) (unpublished), *report & recommendation adopted*, 2017 WL 11048879.

[4]Some judges will not approve an agreement to settle a FLSA overtime claim that includes a general release because, without an indication of the value of the released claims, the fairness and reasonableness of the compromise cannot be determined. *See, e.g., Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351−52 (M.D. Fla. 2010).

Some judges will strike a non-disparagement provision because its placement of a prior restraint on one's ability to speak freely about the case contravenes public

On attorney's fees and costs, given the parties' representation they agreed on the attorney's fees separately from the amounts to Burkett, the Court need not undertake a lodestar review. *See* Bonetti, 715 F. Supp. 2d at 1228. Moreover, the fees and costs appear reasonable considering the time to prepare and file a complaint, answer the Court's interrogatories, review discovery, and engage in settlement efforts.

## Recommendation

I recommend:

1. **granting** the parties' motion, Doc. 17, and approving the parties' settlement, Doc. 17-1, as a fair and reasonable resolution of disputed issues;

2. **dismissing** the case with prejudice; and

---

policy and the First Amendment. *See, e.g.,* Loven v. Occuquan Grp. Baldwin Park Corp., No. 6:14-cv-328-Orl-41TBS, 2014 WL 4639448, at *3 (M.D. Fla. Sept. 16, 2014) (unpublished).

Some judges will strike a no-reemployment provision because its impact could be substantial and result in an unconscionable punishment for asserting FLSA rights. *See, e.g.,* Nichols v. Dollar Tree Stores, Inc., No. 1:13–cv–88(WLS), 2013 WL 5933991, at *5–6 (M.D. Ga. Nov. 1, 2013) (unpublished).

3. **directing** the Clerk of Court to close the file.[5]

**Done** in Jacksonville, Florida, on October 7, 2019.

*PATRICIA D. BARKSDALE*
*United States Magistrate Judge*

c: The Honorable Marica Morales Howard
Counsel of Record

---

[5]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.